WADDELL, TOM, Jr., Associate Judge.
Defendant, appellant, files two timely appeals of his conviction of murder in the first degree (73-325) and forceable rape (73-326). He raises three points on appeal all addressed to the sufficiency of the evidence: (1) Proof of force sufficient to overcome resistance, (2) Premeditation, (3) Was defendant’s intoxication sufficient to negative premeditation?
The defendant invited the deceased (Massey), his girl friend (Laster), and a male companion (Rabie) to spend the night in his apartment. The four spent the evening at a bar and pool hall where defendant had considerable to drink. At approximately 1:00 a. m., on the way to his apartment, the defendant took, a pistol out of his pocket and fired it at least once. At the apartment, some sandwiches were consumed. The defendant told Rabie to sleep on the living room sofa and told Massey and Laster to retire to defendant’s bed. The defendant continued to sit at a kitchen table. When Laster went to the bathroom at approximately 2:00 a. m., defendant was still at the table with his head down. Laster returned to bed with Massey.
At approximately 5:00 a. m., Laster is awakened by a gun shot, smelled gun smoke, attempted to awaken Massey and determined he was dead. Defendant was in the room. Defendant got into bed with Laster and attempted to have sexual relations with her. Defendant couldn’t have an erection so he required Laster to use her mouth. When she balked, defendant told her “you’d better do as I say or you’ll end up like him” (indicating Massey).
Later, defendant and Laster went into the kitchen and talked about different things for awhile. He took a pistol from his pocket and told her “this is my baby and stuff like that”. Laster testified that after about thirty minutes in the kitchen defendant renewed his sexual advances, required her to take her pants off, and they had sexual intercourse during which time he penetrated her. She testified that she submitted to him out of fear because he told her if she didn’t do what he said she’d end up like Massey.
A common bathroom separated defendant’s living quarters from his employer’s apartment (Roberts). At approximately 9:00 a. m., defendant went into the bathroom and summoned Roberts. (Roberts was later charged and pled guilty to being an accessory after the fact). Defendant told Roberts he had killed a man and needed his paycheck so he could leave for Texas. Roberts was unbelieving at first but defendant convinced him that there was a dead body in the bed. Defendant wanted a shovel, and they discussed a location to bury the body.
Soon after Roberts returned to his apartment defendant accompanied Laster to a convenience store across the street from the house. Several people were encountered, even a policeman was close by, but Laster knew defendant was still armed and testified that she was afraid to make an outcry.
Rabie, who had slept through all of the events of the preceding night, was awakened about 11:00 a. m. Defendant and Las-ter told him that Massey’s death was an accident. Later the three of them went to the home of one, Colburn, and he too was told Massey’s death was an accident. After returning to defendant’s apartment *91 Laster, with defendant watching, crossed the street to call a cab for defendant and then returned. She testified she was afraid not to return for fear defendant would harm Rabie. When the cab arrived defendant left and Laster immediately told Rabie the truth about Massey’s death. Laster and Rabie then went back to Col-burn’s house and advised him of the true facts. Rabie then called the police.
Defendant was taken into custody at the Belle Glade bus station and advised he was under arrest for murder and rape. He admitted the murder but denied having raped Laster. Though defendant did not testify, it is apparant his position was that the sexual relations were consensual.
The facts have been related in greater detail than usual because Laster’s conduct might be interpreted to be less than that which would lead to a conviction of rape. Was being awakened by a gun shot, the smell of gun smoke, and realizing your boyfriend is dead beside you sufficiently terrorizing to overcome the resistance of this 18 year old young woman? Was her fear for the safety of her friend Rabie justification for her failure to' summons aid more quickly? That determination was the responsibility of the jury.
Six citizens of Palm Beach County, Florida sat for three days, had the opportunity to see the defendant if not hear from him. They saw the prosecutrix, heard her story, and the testimony of the other witnesses. They decided as a matter of fact that Antonio Rodriques killed Roger Allen Massey with premeditation. Further that this killing together with his subsequent conduct was sufficient to overwhelm the resistance of Joyce Elaine Laster so that his carnal knowledge of her was forceable rape. There is sufficient competent evidence in the record to support those findings.
It is not the province of this court to substitute its judgment for that of the triers of fact; the finding of the jury will not be disturbed in,the absence of a clear showing that they are erroneous as a matter of law. Pearsall v. State, Fla.App.1968, 215 So.2d 58.
Accordingly, the judgment of the trial court is affirmed.
DOWNEY, J., concurs.
WALDEN, J., concurs in part; dissents in part, with opinion.